## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CURBIO, INC.**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 22-3619-KSM** |
| **MEGAN MILLER**, et al., | |
| Defendants. | |

## MEMORANDUM

Marston, J.                                                                                     March 13, 2023

Plaintiff Curbio, Inc. moves to strike seven affirmative defenses included in Defendants Megan Miller and Il Sun Yoo's (the "Owners") Answer to the Amended Complaint. (Doc. No. 16.) For the reasons discussed below, that motion is granted in part and denied in part.

## I.      FACTUAL BACKGROUND

Viewing the allegations in the Amended Complaint as true, the relevant facts are as follows.

Curbio is "a home-improvement company that partners with real estate agents and homeowners to deliver a hassle-free home improvement experience" with the goal of getting "every home on the market and sold fast." (Doc. No. 14 at ¶ 10.) To do this, Curbio allows homeowners to defer paying for any improvements until after the home sells. (*Id.* at ¶ 11.) In August 2019, Owners contracted with Curbio to perform renovations on their house under this model. (*Id.* at ¶ 12.) The contract, which was titled, "Pennsylvania Home Improvement Contract" (the "Contract"), priced the renovations at $210,498.85 and specified that any modifications to the scope of work were to be made by "written Change Order signed by both parties." (*Id.* at ¶¶ 13–14; *see also* Doc. No. 14-1.)

Over the next year and ten months, the parties entered numerous Change Orders, which frequently increased the contract price. (Doc. No. 14 at ¶¶ 16–23 (describing Change Orders entered in October 2019, March 2020, May 2020, August 2020, and June 2021).) For example, in October 2019, just two months after the parties entered the initial Contract, they entered a Change Order that increased the cost of renovations by $75,127. (*Id.* at ¶ 17.) In March 2020, they entered another Change Order, which increased the price by an additional $130,542.50. (*Id.* at ¶ 18.) In May 2020, the parties entered yet another Change Order, which resulted in "design changes that amounted to an entirely new scope of work" and brought the price of renovations to $597,713.00. (*Id.* at ¶ 20.) Finally, on June 15, 2021, the parties entered the final Change Order, which increased the price by $16,118.75. (*Id.* at ¶ 23.)

According to Curbio, these constant changes to the scope of work for the project frustrated Curbio's performance under the Contract. (*Id.* at ¶ 27.) Curbio contends that its performance was also frustrated by the presence on site of an unaffiliated HVAC contractor and an interior designer, who often gave instructions to Curbio that conflicted with those given by Owners. (*Id.* at ¶¶ 28–32.)

Curbio alleges that after the June 2021 Change Order, and almost two years of work, Owners asked "to terminate the Contract and pay Curbio for the work already performed." (*Id.* at ¶ 35.) Curbio agreed, but Owners have since refused to pay Curbio for those services. (*Id.* at ¶ 37.)

## II.     PROCEDURAL HISTORY

On September 9, 2022, Curbio brought this action against Owners to recover $369,691.90. (*Id.* at ¶ 39; Doc. No. 1.) The Amended Complaint asserts two counts, one for breach of contract and one alternative count for quantum meruit and unjust enrichment. (Doc. No. 14 at 6–8.)

2

Owners have filed an answer with affirmative defenses.  (Doc. No. 15.)  The Answer, unlike most answers, does more than merely admit or deny the allegations in the Amended Complaint; it also includes allegations about the parties' relationship.  (*See generally id.*)  Of note, Owners alleges that:

- They "have honored their contractual obligations," and it is Curbio who "failed to comply with the terms of the parties' agreement."  (*Id.* at ¶ 2.)

- Curbio failed to perform in accordance with [the June 2021 Change Order] and granted a credit . . . to [Owners]" for the $16,118.75 required by that Change Order.  (*Id.* at ¶ 23.)

- Owners hired the HVAC contractor "at the request and direction of [Curbio]" and the contractor was "at all times, available to [Curbio]."  (*Id.* at ¶ 28.)

- During termination discussions, Owners "offered only to pay for services actually completed by [Curbio]."  (*Id.* at ¶ 35.)  They "never offered to pay for work that was done in a poor or unworkmanlike condition, work that was not performed in accordance with the agreed upon terms, nor work that needed to be undone to amend work done in a poor or unworkmanlike condition."  (*Id.*)  For example, Owners "did not agree to pay [Curbio] for installed drywall in a good and workmanlike conditions when such drywall needed to be ripped out in order to install a required electric panel."  (*Id.*)

- After the Contract's termination, Curbio demanded that it be paid for the work it had already performed, but Owners "never agreed to pay" that amount.  (*Id.* at ¶ 36.)

- Curbio "spent three years turning Defendant's home into an uninhabitable construction zone, hiring contractors who failed to complete work as required by it, purchasing improper materials for the work it agreed to perform, failing to manage the project as required, allowing contractors to consume alcohol on the property, and, ultimately, left [Owner's] with a property which needed several hundred thousand dollars to return to a habitable state."  (*Id.* at ¶ 40.)

- The work performed by Curbio "was not done in a good or workmanlike manner."  (*Id.* at ¶ 41.)

Owners end the Amended Complaint with a list of 20 affirmative defenses.  (*See* Doc. No. 15 at 10–11.)

On January 12, 2023, Curbio moved to strike seven of those defenses.  (*See* Doc. No. 16.)  Owners substantively respond to the motion as to four defenses:

3

- Affirmative Defense No. 2:  "Plaintiff's claims are barred by unclean hands."

- Affirmative Defense No. 7:  "Plaintiff's claims are barred by the doctrine of waiver."

- Affirmative Defense No. 8:  "Plaintiff's claims are barred by the doctrine of acquiescence."

- Affirmative Defense No. 14:  "Plaintiff's claims are barred, in whole or in part, by its failure to abide by the Home Improvement Consumer Protection Act."

(*Id.*; *see also* Doc. No. 15 at 10.)[1]  Owners argue that each defense "meets the legal standard for pleading and is supported by facts in the pleadings of record."  (Doc. No. 17 at 1.)

## III.    LEGAL STANDARD

Curbio moves to strike Owners' affirmative defenses under Federal Rule of Civil Procedure 12(f), which states the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f); *see also Great W. Life Assur. Co. v. Levithan*, 834 F. Supp. 858, 864 (E.D. Pa. 1993) ("A motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure is the proper method to eliminate matters in pleadings which are found to be redundant, immaterial, impertinent or scandalous" or "to object to an insufficient defense.").  Although the "court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," *N. Penn. Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994) (quotation marks omitted), "motions to strike are generally viewed with disfavor," *Great W. Life Assur. Co.*, 834 F. Supp. at 864; *see also United States v. Marisol*, 725 F. Supp. 833, 836 (M.D. Pa. 1989) ("[M]otions to strike are often viewed with disfavor because of their potential to be used as a dilatory tactic.").  A motion to strike "is a drastic remedy to be resorted to only when required for the purposes of justice." *N. Penn. Transfer, Inc.*, 859 F. Supp. at 158 (quotation marks omitted); *see also Wilson v. King*, Civ. A.

---

[1] Owners do not oppose the motion as to the remaining three defenses—defenses 4, 5, and 6—and therefore, the motion is granted as to them.

No. 06-CV-2608, 2010 WL 678102, at *4 (E.D. Pa. Feb. 24, 2010) ("[E]ven if a motion to strike is technically appropriate and well-founded, motions to strike defenses as insufficient are often denied in absence of a showing of prejudice to the moving party."). *But see Marisol*, 725 F. Supp. at 836 (noting that although motions to strike are disfavored, "they do serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case").

## IV.   DISCUSSION

Curbio argues that defenses 2, 7, 8, and 14 are insufficient and should be stricken because they fail to meet "the general pleading requirements of the Federal Rules of Civil Procedure including the 'short and plain' statement rule" described by the Supreme Court in *Twombly* and *Iqbal*.  (Doc. No. 16-1 at 3.)  Owners respond that the *Twombly*/*Iqbal* plausibility standard does not govern affirmative defenses and that they have satisfied Rule 8(c)'s more relaxed standard by "stat[ing]" their defenses.  (Doc. No. 17-2 at 2.)

### A.   Pleading Standard for an Affirmative Defense

In *Twombly* and *Iqbal*, the Supreme Court held that every claim in a complaint must contain sufficient factual allegations to suggest the claim "is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing pleading requirement under Rule 8(a)(2)).  The Third Circuit has not ruled on whether a litigant asserting an affirmative defense must similarly plead facts sufficient to suggest the defense "is plausible on its face," and district courts in this Circuit and across the country are split on the issue, *see, e.g.*, *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 97 & n.8 (2d Cir. 2019) ("[W]hether *Twombly* applies to the pleading of affirmative defenses, is an issue that has divided the many district courts and commentators that have considered it.") (collecting cases).

Some district courts have broadly applied the plausibility standard to claims and

affirmative defenses, finding that *Twombly* and *Iqbal* set a general pleading standard.  *See, e.g.*, *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 622 (S.D.N.Y. 2008) (stating that *Twombly*'s plausibility standard applies to "a motion to strike an affirmative defense pursuant to Rule 12(f)"); *HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp. 2d 687, 691 (N.D. Ohio 2010) ("[B]oth complaints and affirmative defenses should provide enough notice to the opposing party that indeed there is some plausible, factual basis for the assertion and not simply a suggestion of the possibility that it may apply to the case.") (quotation marks omitted); *Perez v. Gordon & Wong Law Grp., P.C.*, No. 11-CV-03323, 2012 WL 1029425, at *7 (N.D. Cal. Mar. 26, 2012) ("The defendant bears the burden of proof on an affirmative defense in the same way that the plaintiff bears the burden of proof on any claim for relief.").

On the other hand, some district courts, including many district courts in this Circuit, have declined to do so, distinguishing Rule 8(a), which requires a "short and plain statement" of a claim, from Rule 8(c), which requires an "affirmative[ ] state[ment] of any avoidance or affirmative defense."  *See, e.g.*, *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 895 (E.D. Pa. 2011) (discussing the text and purpose of Rules 8(a) and 8(c) and concluding that *Twombly* and *Iqbal* do not apply to affirmative defenses.  "An affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved"); *Savage v. Temple Univ. – of Commonwealth Sys. of Higher Ed.*, Civil Action No. 19-6026-KSM, 2020 WL 5602651, at *4 (E.D. Pa. Sept. 18, 2020) ("In reviewing the challenged affirmative defenses, we do not apply the *Twombly/Iqbal* plausibility standard."); *Alliance Indus. Ltd. v. A-1 Specialized Servs. & Supplies, Inc.*, Civ. A. No. 13-2510, 2014 WL 4548474, at *2 (E.D. Pa. Sept. 11, 2014) (adopting *Tyco Fire Products*' reasoning); *Weed v. Ally Fin. Inc.*, Civ. A. No. 11-2808, 2012 WL 2469544, *3 (E.D. Pa. June 28, 2012) (same) (finding that "many courts, including the majority

of district courts in this Circuit, have persuasively argued that *Twombly/Iqbal* does not apply");
*see also Leviton Mfg. Co. v. Pass & Seymour, Inc.*, 264 F. Supp. 3d 421, 427 (E.D.N.Y. 2017)
(refusing to apply the plausibility standard to determine whether a defense was sufficient under
Rule 8(c)).

Finally, some courts take a middle ground, like the Second Circuit in *GEOMC Co.*, which
held that "the plausibility standard of *Twombly* applies to determining the sufficiency of all
pleadings, including the pleading of an affirmative defense," but described it as a "relaxed
application of the plausibility standard."  918 F.3d at 98 (explaining that "context matters" and
"the pleader of an affirmative defense has only the 21-day interval to respond to an original
complaint," which is significantly less than the pleader of a complaint who "has the entire time
of the relevant statute of limitations to gather facts necessary to satisfy the plausibility
standard").  The Second Circuit is the only appellate court to speak on the issue.

Having reviewed the parties' arguments and the case law, the Court is persuaded by the
reasoning provided in *Tyco Fire Productions LP* and similar cases.  The text and purpose of Rule
8(a) are sufficiently different from the text and purpose of Rule 8(c) as to suggest the standard
that applies to one should not govern the other.  *Compare* Fed. R. Civ. P. 8(a) ("A pleading that
states a claim for relief must contain . . . *a short and plain statement* of the claim *showing* that
the pleader is entitled to relief . . . .") (emphases added), *with* Fed. R. Civ. P. 8(c) ("In responding
to a pleading, a party must *affirmatively state* any avoidance or affirmative defense.") (emphasis
added); *see also Twombly*, 550 U.S. at 557 ("The need at the pleading stage for allegations
plausibly suggesting [the elements of the cause of action] reflects the threshold requirement of
Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled
to relief.'"); *id.* at 557–58 (discussing the "practical significance" of the plausibility requirement

7

as ensuring the plaintiff can state a claim of entitlement to relief before subjecting a defendant to costly discovery).

Accordingly, in ruling on Curbio's motion to strike defenses 2, 7, 8, and 14, the Court considers only whether the defense provides "fair notice of the issue involved." *Tyco Fire Prods LP*, 777 F. Supp. 2d at 900–01 (explaining that this is "not an exacting standard even remotely approaching the type of notice required of a claim under *Twombly* and *Iqbal*"). "Providing knowledge that the issue exists, not precisely how the issue is implicated under the facts of a given case, is the purpose of requiring averments of affirmative defenses," and the Court will strike defenses challenged on sufficiency grounds only if they fail to meet this low standard. *Id.* at 901; *see also Alliance Indus. Ltd.*, 2014 WL 4548474, at *3 (denying a motion to strike affirmative defenses where the defense "adequately puts Plaintiffs on notice that this is a defense that may be developed through factual discovery"); *Weed*, 2012 WL 2469544, at *4 (denying a motion to strike because "Defendant's affirmative defenses, though void of factual details, provide Plaintiffs with fair notice . . . that the issue exists").

### B.    Analysis

Applying this standard, the Court denies Curbio's motion to strike to defenses 2, 7, and 8, and grants the motion as to defense 14.

### 1.    <u>Defense Nos. 2, 7, and 8</u>

The Court finds Owners have adequately stated defenses 2 (unclean hands), 7 (waiver) and 8 (acquiescence). Each defense identifies, albeit generally, the grounds on which Owners anticipate defending this suit and provide sufficient notice to Curbio that those grounds will be explored through discovery. *See Tyco Fire Prods. LP*, 777 F. Supp. 2d at 903 ("Defendant's affirmative defense is plainly satisfactory to the extent it avers 'invalidity.' It provides Plaintiff with notice that Defendant anticipates defending this suit on grounds of invalidity, the details of

which Plaintiff can flesh out through discovery."); *Savage*, 2020 WL 5602651, at *6 (denying

motion to strike affirmative defenses for failure to exhaust and waiver because although they

lacked factual details, they "provide sufficient notice to [the plaintiff] that the issues of

exhaustion and waiver exist"); *see also Alliance Indus. Ltd.*, 2014 WL 4548474, at *3; *Weed*,

2012 WL 2469544, at *4.

      In addition, the pleadings include allegations that support these three defenses, such that

the Court is not willing to eliminate them at this early stage in proceedings.

      In defense 2, Owners contend that Curbio acted with "unclean hands."  (Doc. No. 15 at

10.)  Curbio argues that this defense fails because Owners "have not alleged any wrongful

conduct by Curbio."  (Doc. No. 16-1 at 4.)  But Owners provide multiple instances of "wrongful

conduct" in paragraph 40 of the Answer:

> Plaintiff spent three years turning [Owners'] home into an
> uninhabitable construction zone, hiring contractors who failed to
> complete work as required by it, purchasing improper materials for
> the work it agreed to perform, failing to manage the project as
> required, allowing contractors to consume alcohol on the property,
> and, ultimately, left [Owners] with a property which needed several
> hundred thousand dollars to return to a habitable state.

(Doc. No. 15 at ¶ 40; *see also id.* at ¶ 41 (alleging that the work performed by Curbio "was not

done in a good or workmanlike manner").)  This conduct, if true, could affect whether Curbio is

entitled to relief under Count II, which is based on the "equitable theories of unjust enrichment,

quantum meruit, and quasi contract."  (*See* Doc. No. 14 at 7.)  *See Teraciano v. Commonwealth*,

753 A.2d 233, 237 (Pa. 2000) (explaining that under the doctrine of unclean hands, "a court may

deprive a party of equitable relief where, to the detriment of the other party, if the party applying

for such relief is guilty of bad conduct relating to the matter at issue"); *Shapiro v. Shapiro*, 204

A.2d 266, 268 (Pa. 1964) ("Application of the unclean hands doctrine is confined to willful

misconduct which concerns the particular matter in litigation.")

Similarly, in defenses 7 and 8, Owners raise the issues of waiver and acquiescence.  (*See* Doc. No. 15 at 10.)  *See United States v. Olano*, 507 U.S. 725, 733 (1993) (describing "waiver" as the "intentional relinquishment or abandonment of a known right"); *In re Trust Under Will of Woodward*, No. 1159 EDA 2013, 2014 WL 10896968, at *11 (Pa. Super. Ct. July 22, 2014) (equating "acquiescence" with "consent").[2]  Owners rest both defenses on the Amended Complaint's allegation that they "frustrated Curbio's performance by, *inter alia*, requesting constant changes to the Project's design and fixtures throughout the course of Curbio's performance."  (Doc. No. 17-2 at 4.)  Owners argue that by repeatedly accepting the proposed changes and continuing to work on the project, Curbio acquiesced to those changes and thus, waived its right to argue frustration on that ground.  (*Id.* at 4–5.)

Curbio responds that Owners "misstate the allegations" in the Amended Complaint, which claim that Owners breached the Contract by failing to pay Curbio for the services it performed.  (Doc. No. 18 at 2 (arguing that Owners "never explain how Curbio's agreement to a change order means Curbio acquiesced to receiving no payment whatsoever on the project").)  But this argument misses the point.  Curbio's breach of contract claim is based on Owners' failure to pay, but the Amended Complaint *also* argues frustration and seeks equitable relief.

---

[2] Curbio argues that in Pennsylvania, the "doctrine of acquiescence" applies only to "resolve a municipal boundary dispute when the location of the municipal boundary is uncertain."  (*See* Doc. No. 16-1 at 7 (quotation marks omitted).)  To the contrary, the doctrine of acquiescence has appeared in a variety of contexts, including breach of contract actions.  *See St. Louis, B. & M. Ry. Co. v. United States*, 268 U.S. 169, 175–76 (1925) (discussing the "affirmative defense of acquiescence by acceptance of a smaller sum than was actually due"); *see also Pa. R. Co. v. Erie Ave. Warehouse Co.*, 302 F.2d 843, 849 (3d Cir. 1962) (discussing the "formulated doctrine of acquiescence" in context of an indemnity contract); *Cambria-Stoltz Enters. v. TNT Investments*, 747 A.2d 947, 949–50 (Pa. Super. Ct. 2000) (finding the trial court did not err in holding that the plaintiff acquiesced to the defendant's conversion of the lease to a month-to-month tenancy because the defendant was authorized under the contract to convert the lease, it notified the plaintiff that it was converting the lease, and the plaintiff "did not dispute that but remained in the . . . property").  Although acquiescence is a somewhat amorphous concept in Pennsylvania, courts generally seem to accept that it refers to a plaintiff's knowing consent to a bad or unlawful act by the defendant.  *See In re Trust Under Will of Woodward*, 2014 WL 10896968, at *11.

(*See* Doc. No. 17-2 at 4.)  Owners' waiver and acquiescence defenses are potentially relevant to those issues.  *See Rupert v. PPG Indus., Inc.*, No. 07cv0705, 2007 WL 3125092, at *2 (W.D. Pa. Oct. 24, 2007) (refusing to strike the defendant's defense of waiver/release because the court could not, "at this early stage of the proceedings," state that "the defendant's second defense of waiver/release has no possible relation to the controversy, may cause prejudice to the plaintiffs, or will confuse the issues"); *see also Robertshaw v. Pudles*, Civil Action No. 11–7353, 2014 WL 1789307, at *13 (E.D. Pa. May 6, 2014) ("[A]s a form of equitable relief, declaratory judgment may be foreclosed by equitable defenses, including unclean hands, laches, ratification and/or acquiescence.") (quotation marks omitted).

In sum, Owners have provided sufficient notice of defenses 2, 7 and 8 to survive Cubio's motion to strike.  The Court cannot say that these defenses have "no possible relation to the controversy" or that their inclusion may prejudice Curbio or confuse the issues.  *Wilson*, 2010 WL 678102, at *2 ("[M]otions to strike are 'not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'") (quoting *N. Penn Transfer, Inc.*, 859 F. Supp. at 158); *see also Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 143 (E.D. Pa. 2011) ("When a party moves to strike a defense on insufficiency grounds, the motion should not be granted unless the insufficiency of the defense is clearly apparent.") (quotation marks omitted).  Whether Owners will ultimately prevail on any defense is a question to be resolved after discovery.

2.    **Defense No. 14**

The Court cannot find, however, that Owners have provided sufficient notice as to defense 14.  In that defense, Owners contend that Curbio's "claims are barred, in whole or in part, by its failure to abide by the Home Improvement Consumer Protection Act ['HICPA']." (Doc. No. 15 at 10.)  The HICPA is a Pennsylvania statute that prohibits the enforcement of a

11

home improvement contract against an owner, unless the contract includes 13 specified terms. *See* 73 Pa. Stat. & Cons. Stat. § 517.7(a). The Act also outlines 12 "prohibited acts," including the "[a]bandon[ment] or fail[ure] to perform, without justification, any home improvement contract," *id.* § 517.9(5), and the "[d]eviat[ion] from or disregard[ing of] plans or specifications, in any material respect, without a written change order," *id.* § 517.9(6). Curbio takes issue with Owners' failure to identify any specific section of the HICPA that they believe was violated. (Doc. No. 16-1 at 8.) The Court agrees that this failure, when combined with Owners' failure to provide any factual details about those violations, renders defense 14 insufficient. *See Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 146–47 (E.D. Pa. 2011) ("Lincoln has failed to provide Dann with fair notice of the nature of some of its defenses . . . . With regard to the first defense . . . Lincoln neglects to identify which statutes of limitations are at issue.").

In their opposition brief, Owners allege that Curbio "failed to abide by the [parties'] written contract," an allegation, which, if true, could amount to a violation of § 517.9(6). (Doc. No. 17-2 at 5.) But it is not clear how Curbio's violation of § 517.9 would render the Contract (or any amendment to that Contract) unenforceable. *Compare* 73 Pa. Stat. & Cons. Stat. § 517.7 (listing 13 requirements that must be met for a home improvement contract to be "valid or enforceable against an owner"), *with id.* § 517.9 (listing 12 "prohibited acts" that "[n]o person shall" perform). Even if Owners had shown that § 517.9 could serve as a defense to Curbio's contract claims, they do not suggest that this is the only subsection of the HICPA under which they plan to challenge the Contract.[3] To the extent Owners plan to rely on any other provision in the HICPA, the Court cannot find Curbio has been given proper notice of those issues.

---

[3] The Court also notes that in the parties' Joint 26f report, Owners argued that the Contract was amended in May 2020 through "a 'Proposal' document, which meets almost none of the requirements of the [HICPA]." (Joint 26f Report at 3 (citing 73 Pa. Stat. & Cons. Stat. § 517.7(3), (6), (10)–(13)).)

Accordingly, the Court grants the motion to strike defense 14.  However, that grant is without prejudice to Owners' right to amend their Answer.  *See Dann*, 274 F.R.D. at 146–47.

## V.      CONCLUSION

The Court finds that a party asserting an affirmative defense need only provide "fair notice of the issue involved."  Because Owners have satisfied that standard for defenses 2, 7 and 8, the motion to strike is denied as to these defenses.  The motion is granted without prejudice as to defense 14, and Owners are allowed to amend their Answer to provide additional information as to this defense.  Because Owners do not address the motion to strike defenses 4, 5, and 6, the motion is granted with prejudice as to those defenses.

An appropriate Order follows.